CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 15 2010

JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SCOTT M. BOGER | ) |
| | ) Civil Action No. 7:10cv00194 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| GENE M. JOHNSON, et al. | ) |
| | ) By: Samuel G. Wilson |
| Defendants. | ) United States District Judge |

This is an action under 28 U.S.C. § 1983 by an inmate of the Virginia Department of Corrections ("VDOC"), Scott M. Boger, who has been unsuccessfully battling the VDOC's administrative policy that requires inmates to pay $12 to cover the cost of obtaining their birth certificates as a part of reentry planning and preparation. According to Boger's interpretation of Virginia law, the VDOC is responsible for paying all fees that are necessary to obtain the required documents. He has steadfastly refused to pay the fee even in the face of losing good-time credit and having his good-time classification level unfavorably increased. Boger was charged with the institutional infraction of refusing to participate in reentry planning or preparation and was found guilty following a hearing, which resulted in a less advantageous good-time classification level, the loss of ninety days accumulated good-time credit, and ten days in isolation.[1]

Boger's appeals within the VDOC were unsuccessful, and he filed a petition for writ of habeas corpus with the Supreme Court of Virginia. That court held that habeas corpus did not lie

---

[1] It appears, however, that Boger may have only spent five days in isolation. (See Pl.'s Req. Admis. to Def. Hollar #15, at 4, ECF No. 53-5 ("Admit that Boger was in disciplinary isolation for five (5) days; from Wednesday August 27, 2009 – Monday, August 31, 2009.").)

in the matter and dismissed his petition. Boger, in turn, filed a habeas petition in this court, and the court dismissed it. Boger v. Young, 7:10 CV 175 (W.D. Va. Nov. 22, 2010). This court concluded that although Boger attempted to position his dispute as a constitutional claim, it was in reality nothing more than a dispute that the VDOC's administrative policy is inconsistent with Virginia law on the question of who is responsible for paying the $12 fee. Boger's current § 1983 suit names various officials[2] involved in various steps of the disciplinary process who allegedly denied him due process and others who allegedly mistreated him while he was in isolation.

A favorable outcome as to Boger's challenge to the institutional charge and the process that led to his institutional conviction and the revocation of Boger's good-time would necessarily spell a speedier release. But unless his institutional conviction is invalidated, Boger's exclusive remedy in federal court to mount a challenge to the duration of his sentence is 28 U.S.C. §2254. Consequently, the court dismisses Boger's claims that necessarily mount that challenge. Alternatively, the court finds that Boger's challenge to the institutional charge and the disciplinary process is frivolous. The court also grants summary judgment to those defendants who are expressly named in Boger's claims relating to the conditions of Boger's confinement in

---

[2] Boger sues VDOC Director Gene M. Johnson, Deputy Director John Jabe, Western Regional Director John Garman, Warden D.A. Braxton, Assistant Warden S.W. Hollar, Lt. S.L. Sampson, Hearings Officer T. Hostetter and Correctional Counselor R. Willis. In addition, he has sued unnamed defendants Jane Doe #1, his nurse while in isolation who he has moved to name as Ms. Jackson, and John Doe #2 and #3, his guards while in isolation. Boger has also moved to add Mark R. Warner, former Virginia governor and current United States Senator, as a party. Boger claims that, as governor, "Warner's willful and wanton disregard for the plain language of the Code of Virginia § 53.1-10(7) caused Boger to be deprived of his entitled property without due process of law." The court denies Boger's motion as frivolous.

isolation and dismisses without prejudice the "Jane and John Doe" defendants because Boger has failed to state a plausible claim for relief against them.

## I.

Virginia Code § 53.1-10, lists the "duties and powers" of the Director of the VDOC, which include making "application to the appropriate state and federal entities so as to provide any prisoner who is committed to the custody of the state a Department of Motor Vehicles approved identification card . . . , a copy of his birth certificate if such person was born in the Commonwealth, and a Social Security card . . . [.]" Va. Code § 53.1-10(7). As the VDOC's chief executive officer, the Director has promulgated an operating procedure relating to his responsibility to obtain proper identification documents for prisoners to use upon their release. (See Defs.' Mem. Summ. J. Ex. II, at 14, ECF No. 27-2 (reproducing OP 820.2 VIII).)[3]

According to the operating procedure, any prisoner (other than a death row inmate) who does not have a copy of his birth certificate in his "institutional Criminal Record will be given 30 days to produce a copy . . . ." (Id.) "If no copy of a birth certificate is received within 30 days," the operating procedure provides that "an application shall be submitted to the appropriate State to obtain an official copy." (Id.) The prisoner is responsible for paying the fee required by the vital records office, and if he has insufficient funds to cover the cost of the application, the VDOC will "loan" him the money. (Id. at 14–15.) The operating procedure provides that any prisoner who refuses to make a "reasonable effort" to obtain his birth certificate will be charged

---

[3] The court notes that the pertinent section of the Director's operating procedure, OP 820.2 VIII, was renumbered as OP 820.2 VII after its application to Boger's case. For purposes of clarity, the court will refer to the older version of the operating procedure which is reproduced in full on pages 14–15 of Exhibit I of the Defendant's Memorandum in Support of its Motion for Summary Judgment, filed at ECF No. 27-2.

3

with the offense of refusing to participate in reentry planning or preparation, which carries a "mandatory penalty" of 90 days loss of accumulated good time and subjects the inmate to a less advantageous good-time credit classification level. (Id. at 15.)

While Boger was incarcerated at the Augusta Correctional Center, the warden notified him of his responsibility to obtain his birth certificate. Boger indicated that he did not intend to comply because Vital Records charged a $12 processing fee, and he believed the Director was responsible for obtaining the required documents and therefore could not shift payment of that fee to Boger. Correctional officials did not immediately charge Boger with failure to comply with the reentry process. Instead, Boger's correctional counselor wrote him on June 23, 2009:

> As of today's date we have not received a copy of your birth certificate from your family nor have you applied for one. Be advised that there is now a deadline to get this completed and it is no longer your Annual Review. This is just to make you aware that in the next couple of months those of you who have yet to comply will have to make the decision to apply for the birth certificate or take the charge and everything that comes along with it. You will be receiving a pass from me sometime in the coming weeks to do this. At that time you can let me know what you have decided to do.

(Defs.' Mem. Summ. J. Ex. III, at 8, ECF No. 27-4.)

Boger then filed an "informal complaint" stating: "[Virginia] law says the VDOC Director is to provide these for me upon my release, not that the VDOC Director can coerce me to pay for it myself." (Defs.' Mem. Summ. J. Ex. I, at 12, ECF No. 27-2.) His counselor replied:

> The Code of Virginia 53.1-10 (7) states that one of the powers and duties of the Director of the [VDOC] is to make an application to the appropriate state and federal entity so as to provide you with certain documents, the birth certificate being one of them. This does not state that the document in question will be purchased for you. It states that an application will be made. When you come to my office to apply for your birth certificate, I will provide you with the appropriate application and even help you complete it. Once this is done, the duties of the Director will have been satisfied. The application will then be sent

>out, and you will be charged $12.00 to cover the cost of your birth certificate.
>This document will be given to you upon your release from the [VDOC].

(Id.) Boger, in turn, filed a formal grievance which was denied at every level. Boger then wrote Gene M. Johnson, the Director, reiterating his position and his intention to apply for a writ of mandamus in the Virginia Supreme Court to compel the Director to perform his obligations under Virginia law. Boger stated: "I'm not going to pay $12 for something you were obligated to do. You are hereby formally notified of my refusal to comply with OP 820.2 VIII B." (See Defs.' Mem. Summ. J. Ex. III, at 19, ECF No. 27-4.)

Still, correctional officials did not charge Boger with an institutional infraction. Unsatisfied, Boger wrote his counselor stating that he would "appreciate" being charged so he could "take the issue to court." (See id. at 20.) Eventually, Boger got his wish, had a hearing, was convicted, lost ninety days good time credit and was given ten days in isolation, filed internal appeals, lost those appeals, had his good time credit level increased, and filed a petition for writ of habeas corpus in the Supreme Court of Virginia, which dismissed his petition on the ground that habeas "did not lie in the matter."

This court, in turn, dismissed Boger's federal habeas petition because although Boger garnished it with references to the Constitution's due process and equal protection clauses, in reality, it distilled to nothing more than a claim that the revocation of Boger's good-time credit and the increase of his good-time classification level violated Virginia law. Because the Supreme Court has "repeatedly held that federal habeas corpus relief does not lie for errors of state law[,]" Wilson v. Corcoran, 178 L. Ed. 2d 276, 280 (2010) (internal quotation and citation omitted), the court dismissed Boger's federal habeas petition.

5

Boger's current § 1983 complaint repackages the claims he raised in his federal habeas petition and adds a claim that the following conditions during his 10 days in isolation amounted to cruel and unusual punishment: his mattress was five inches too short; he was not given his noontime antacids and pain reliever; and he did not receive cleaning supplies for three days to clean up the dead insects and filthy toilet in his isolation cell.

## II.

Boger has repackaged his habeas claims as § 1983 claims against a host of individuals having some connection to his disciplinary process. He seeks retrospective relief, including compensatory damages, punitive damages, a declaratory judgment that the regulation "applied against Boger is facially unconstitutional" and that his rights were violated by being placed in isolation, and prospective relief, namely an injunction prohibiting the VDOC from charging Boger a second time for violating that regulation or from charging other inmates for not obtaining their birth certificates. Before dismissing Boger's federal habeas petition arising out of the disciplinary process, it was clear to this court that Boger received all the process he was due and that his constitutional claims challenging that process were frivolous. However, here the court dismisses his retrospective claims on another ground: a favorable outcome on those claims would necessarily imply the invalidity of the revocation of Boger's good-time credits and the length of Boger's sentence, and Boger cannot mount such a challenge in federal court under § 1983 unless the revocation of his good-time credits otherwise first invalidated. Therefore, the court dismisses Boger's claims that are premised on the assertion that the disciplinary charge against him arising out of his failure to obtain his birth certificate and the process he was afforded in challenging that charge violated his constitutional rights.

Wilkinson v. Dotson, 544 U.S. 74 (2005), is the Supreme Court's latest decision to consider when a prisoner's § 1983 claim is precluded because it intrudes upon the core of habeas corpus. The case involves the claims of two Ohio prisoners who were denied parole and sought new parole hearings conducted under constitutionally proper procedures and an injunction ordering Ohio to comply with constitutional due process and *ex post facto* requirements in the future. Though distinguishable, the case is helpful because it traces the development of the pertinent jurisprudence beginning with the seminal decision of Preiser v. Rodriguez, 411 U.S. 475 (1973) and assists in framing the "core of habeas" issue here.

In Preiser, the Supreme Court initially considered the relationship between habeas corpus and § 1983. The state prisoners in Preiser brought § 1983 actions challenging the constitutionality of prison disciplinary proceedings resulting in the loss of their good-time credits. An analysis of the language, history, and purposes of habeas corpus and § 1983, "led the Court to find an implicit exception from § 1983's otherwise broad scope for actions that lie 'within the core of habeas corpus.'" Wilkinson, 544 U.S. at 79 (quoting Preiser, 411 U.S. at 487). A state prisoner's challenge falls within that core, according to the Court, when he "challenges the fact or duration of his confinement . . . and seeks either immediate release from prison, or the shortening of his term of confinement." Id. (internal citations and quotations omitted). An action to restore good-time credits is in effect an attack on the duration of physical confinement, and thus "the Preiser prisoners could not pursue their claims under § 1983." Id.

As the Wilkinson court noted, the Supreme Court's next pertinent decision, Wolff v. McDonnell, 418 U.S. 539 (1974), "elaborated the contours of this habeas corpus core." Id. (internal quotations omitted). In Wolff, as in Preiser, state prisoners challenged, under § 1983,

7

the "revocation of good-time credits by means of constitutionally deficient disciplinary proceedings." Id. (citing Wolff, 418 U.S. at 553). The Court in Wolff held that Preiser precluded "'an injunction restoring good time improperly taken'[.]" Id. (quoting Wolff, 418 U.S. at 555). But, as the Court recounted in Wilkinson "the inmates *could* use § 1983 to obtain a declaration ('as a predicate to' their requested damages award) that the disciplinary procedures were invalid." Id. They could also seek an injunction against "*prospective* enforcement of invalid prison regulations. . . . In neither case would victory for the prisoners necessarily have meant immediate release or a shorter period of incarceration; the prisoners attacked only the wrong procedures, not . . . the wrong result." Id. at 80. (internal citations and quotations omitted).

Next, in Heck v. Humphrey, 512 U.S. 477 (1994) "the Court considered a different, but related, circumstance." Wilkinson, 544 U.S. at 80. In Heck, a state prisoner sued state officials for damages under §1983 claiming that they had caused his conviction by improperly investigating his crime and destroying evidence. Id. Citing "'the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments,'" id. (quoting Heck, 512 U.S. at 486), the Court held "that where 'establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction,' . . . a § 1983 action will not lie 'unless . . . the conviction or sentence has already been invalidated[.]'" Id. (quoting Heck, 512 U.S. at 481–82, 87). Conversely, "where the § 1983 action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment . . . , the action should be allowed to proceed." Id. (internal quotations omitted).

Finally, "in Edwards v. Balisok [520 U.S. 641 (1997)] . . . the Court returned to the prison disciplinary procedure context of the kind it had addressed previously in Preiser and Wolff." Wilkinson, 544 U.S. at 80. In Edwards, the prisoner "sought 'a declaration that the procedures employed by state officials [to deprive him of good-time credits] violated due process, . . . damages for use of the unconstitutional procedures, [and] an injunction to prevent future violations.'" Id. (quoting Edwards, 520 U.S. at 643). The court applied Heck, and concluded that "habeas was the sole vehicle for the inmate's constitutional challenge insofar as the prisoner sought declaratory relief and money damages," because the prisoner's principal claim that the decision-maker was biased, if established, would "'necessarily imply the invalidity of the deprivation of [the prisoner's] good-time credits.'" Id. at 80–81 (quoting Edwards, 520 U.S. at 646). But, as the Court recounted in Wilkinson, the claim of the prisoner in Edwards "for an injunction barring *future* unconstitutional procedures did *not* fall within habeas' exclusive domain . . . [because it did] not necessarily imply the invalidity of a previous loss of good-time credits." Id. at 81 (internal citations and quotations omitted).

> According to the Court, Preiser, Wolff, Heck, and Edwards,
>
> taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)–*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Id. at 81–82. Applying these principles to the facts before it, the Wilkinson court concluded that the prisoners's claims were cognizable under § 1983 because they did not fall within the "implicit habeas exception." Id. at 82. The Court reasoned that the prisoners only sought to invalidate the state procedures used to deny parole eligibility and parole suitability. Id. They did

9

not seek injunctions ordering their immediate or speedier release, and favorable judgments would not necessarily imply the invalidity of their convictions or sentences. Id. At most, one prisoner would receive "[speedier] *consideration* of a new parole application" and the other "at most a new parole hearing at which Ohio parole authorities [might], in their discretion, decline to shorten his prison term." Id. With the lessons of Preiser, Wolff, Heck, Edwards, and Wilkinson in mind, this court now turns first to Boger's claims seeking retrospective relief and then to his claim for an injunction barring future unconstitutional procedures.

Boger claims that the VDOC could not revoke his good-time credits because its challenged regulation is "facially unconstitutional" and because the procedures the VDOC employed were not constitutionally adequate to support that revocation. However, it is apparent to the court that Boger's claim for retrospective relief (a declaratory judgment that the VDOC's regulation that "was applied against Boger, is facially unconstitutional," and that his rights were violated by his placement in isolation, as well as compensatory and punitive damages) necessarily implies the invalidity of the revocation of Boger's good-time credits. As such, it intrudes upon the "core" of habeas corpus, and Boger cannot maintain the claim under § 1983. Therefore the court dismisses these claims.[4]

Boger also seeks prospective relief, an injunction prohibiting the VDOC "from charging Boger a second time for violating [the regulation] at his next Annual Review." (Am. Compl. 24.)

---

[4] In part, Boger challenges his placement in isolation. This internal punishment came as the result of the same hearing that resulted in his loss of good-time credit and placement in a less favorable good-time classification level. Therefore, a challenge to his placement in isolation would, in turn, necessarily imply the invalidity of the hearing which resulted in the revocation of his good-time credits. To the extent that a reviewing court would disagree, the court notes that it would alternatively find for the defendants on the merits because Boger's claims are frivolous.

Purely prospective relief, that is relief seeking to bar "future unconstitutional procedures, [does not] fall within habeas' exclusive domain . . . [because it does not] necessarily imply the invalidity of a previous loss of good-time credits." Wilkinson, 544 U.S. at 81 (internal citations and quotations omitted). Consequently, the court grants summary judgment for the defendants on this claim not because it falls within the "core" of habeas corpus, but rather simply because its underlying constitutional argument is frivolous.[5]

Boger's constitutional claims begin with two assertions: first, the prison regulation requiring inmates to pay the cost of personal identification documents, if they are able, is not rationally related to a legitimate penological interest as required by Turner v. Safely, 482 U.S. 78, 89 (1987), and second, a state regulation that is in violation of state law gives rise to a federal claim under § 1983. Each assertion is frivolous.

As to the first, preparing inmates for eventual release is a core penological interest. Helping them obtain documents they will need for employment and other purposes once released

---

[5] The court grants summary judgment to the defendants on these issues despite Boger's outstanding discovery requests because his claims are frivolous and his requested "discovery would not by itself . . . [create] a genuine issue of material fact sufficient to defeat summary judgment." Strag v. Bd. of Trs., 55 F.3d 943, 954 (4th Cir. 1995). Although Boger does not specifically move under Rule 56(d), the court treats his pending discovery requests as such, Phillips v. Gen. Motors Corp., 911 F.2d 724, 1990 U.S. App. LEXIS 14276, at *17 (4th Cir. Aug. 16, 1990), and denies his request to postpone summary judgment pending discovery. A motion to compel responses to Boger's discovery requests was granted on Nov. 17, 2010. (Order to Respond, ECF No. 41, Nov. 17, 2010.) This order came before the court had dismissed Boger's habeas petition and recognized his claims as frivolous. (Boger v. Young, 7:10CV00175, Nov. 23, 2010.) While the court denies Boger's pending discovery requests because they would not change the outcome of summary judgment, the court also finds Boger's discovery requests to be abusive. Boger has submitted 522 requests for admission to defendants, some of which are frivolous in the extreme (see, e.g., Req. # 24, ECF No. 53-5 ("Admit that when you buy a personal mattress that you make sure you are able to fit on it lying down.")), and requiring the defendants to respond would condone Boger's discovery abuses.

clearly serves that interest. It is rationally related to that preparation. Asking an inmate who cannot otherwise obtain a birth certificate or other essential document to pay the issuing agency the minimal fee it charges the public to acquire the document raises no constitutional concern.

As to the second, "[a]lleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due . . . [which] is not defined by state-created procedures[.]" Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990). And here, it is clear that Boger got all the process he was due: fair notice and a fair opportunity to be heard. Similarly, a claim that a state regulation is not in compliance with a state statute raises no constitutional concerns.[6]

### III.

In addition to his repackaged habeas claims, Boger complains about his treatment during his ten days in isolation. He complains that his mattress was five inches too short, that he did not receive his noontime antacid and pain reliever, and that he was unable to clean his cell and toilet during his first three days in isolation. Boger sues an unnamed nurse and two unnamed guards

---

[6] Boger also asks for relief from the VDOC, specifically declaratory judgment that the VDOC violated his rights, an injunction to prevent the VDOC from applying OP 820.2 VIII to him, an order that VDOC comply with state law and an order the VDOC pay back all monies it illegally collected under the policy. However, the VDOC is not a suable defendant under § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 60, 66 (1989); Yost v. Young, 892 F.2d 75, 1989 WL 152515, at *1 (4th Cir. Dec. 7, 1989); Rhea v. Va. Dep't of Corr., 2002 WL 31398734, at *1 (W.D. Va. Oct. 23, 2002). Nor has he named, and indeed cannot properly name, the VDOC as a defendant. Moreover, the court may not order a state to comply with state law. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). In any event, Boger cannot represent other inmates, see Martin v. Johnson, 1995 U.S. App. LEXIS 35478 at *2 (6th Cir. Nov. 2, 1995) ("An inmate cannot represent fellow inmates[.]") (citing 28 U.S.C. § 1654), and he cannot obtain a refund from the VDOC for monies he has refused to pay.

(Jane Doe #1, John Doe #2, and John Doe #3) who dealt directly with Boger while in isolation and three named prison officials, Hollar, Garman and Braxton,[7] who considered his grievances regarding his treatment there. The court dismisses Boger's claims against the three unnamed defendants without prejudice for failing to state a plausible claim for relief under 28 U.S.C. § 1915A(b)(1)[8] and grants the named defendant's motion for summary judgment.

For Boger to establish a viable claim that prison officials violated his Eighth Amendment rights, he must prove two elements. First, he must show that the harm he complains of "objectively [represents] . . . a substantial risk of serious harm[,]" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotations omitted). Second, he must show that the prison officials were deliberately indifferent to the risk of that harm. Id. at 828. This element requires that "prison officials . . . actually knew of a substantial risk to Boger's health or safety [and that they failed to respond] reasonably to the risk." Id. at 844.

Boger is supposed to receive an antacid and pain medication three times daily. Boger claims that, despite repeated requests, nurse Jane Doe #1 failed to provide his noontime dosage during his time in isolation. Here, Boger's allegations concerning Jane Doe #1 in no way show

---

[7] Braxton and Garman denied his grievance regarding his failure to receive cleaning supplies for his cell while Hollar and Garman denied his grievance regarding his short mattress.

[8] Pursuant to 28 U.S.C. § 1915A(b)(1), a court shall "dismiss . . . any portion of [a prisoner's] complaint, if . . . [it] fails to state a claim upon which relief may be granted." In evaluating a *pro se* complaint, the court "must accept as true all of the factual allegations contained in the complaint" and will construe the complaint liberally, holding the complaint to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Even still, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

that she knew of and was disregarding an excessive risk to Boger's health in failing to provide Boger with his noontime pain medication and antacid. See Wright v. Collins, 744 F.2d 841, 849 (4th Cir. 1985) ("Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983[.]"). Therefore, Boger's claim against Jane Doe #1 is dismissed without prejudice.

Likewise, Boger's claim that John Doe #2 and #3 were deliberately indifferent during the time he was in isolation by giving him a mattress that was several inches too short fails to state a plausible claim for relief. "The Constitution . . . does not mandate comfortable prisons, . . . and only those deprivations denying the minimal civilized measure of life's necessities, . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal citations and quotations omitted). Providing Boger with a shorter mattress for a relatively limited period of time was not sufficiently grave to form the basis of an Eighth Amendment violation. Therefore, the court dismisses this claim against Doe #2 and #3.

Lastly, Boger claims that Doe #2 and #3 were deliberately indifferent to a substantial risk of serious harm to Boger because they did not give him supplies quickly enough to clean his isolation cell's filthy toilet (which he describes at great length) and the dead insects on the floor. Boger's pleadings fail to show a plausible claim that Doe #2 and #3 were deliberately indifferent to a serious risk of harm to Boger. Rather, his claims show that they were slow in responding to

Boger's complaints.[9] Therefore, the court dismisses Boger's claims against Doe #2 and #3 without prejudice.

Boger also has sued Hollar, Garman and Braxton because they denied his grievances regarding his mattress length and the state of his isolation cell. As noted, however, providing Boger with a shorter mattress for a relatively limited period of time is not sufficiently grave to form the basis of an Eighth Amendment violation. Furthermore, by the time Boger filed his grievance about his cell and toilet, Boger had already received cleaning supplies. Since there is no respondeat superior liability under § 1983, Boger "must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999) (internal quotations and citation omitted). Consequently, a superior's after-the-fact denial of a grievance falls far short of establishing § 1983 liability. See, e.g., Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to the inmate's later-filed grievances do not establish the involvement of those officials and

---

[9] Boger also complains about the adequacy of their response. According to Boger-

> Boger was given 5 single sheets of paper towel, 4 oz. of cleaning fluid (prison personnel claim it was 5 oz. but it was more like a quarter cup), a broom, and a mop. Whereas a toilet scrub brush, a course scrub pad, rubber gloves, and mild abrasive or copious amounts more of the disinfected Defendants gave him were needed to properly clean the cell.

(Am. Compl. 23 n.9.)

15

administrators in the alleged underlying deprivation). Therefore, the court grants the three named prison officials' motion for summary judgment.[10]

### IV.

For the reasons stated above, the court *sua sponte* dismiss Boger's claims for retroactive relief from the named defendants and grants summary judgment as to his claims for prospective relief. With regard to his claims regarding his treatment while in isolation, the court grants summary judgment with regard to the defendants he names and *sua sponte* dismisses without prejudice Boger's claims against Jane Doe #1, John Doe #2, and John Doe #3 pursuant to 28 U.S.C. § 1915A(b)(1).

**ENTER:** December 15, 2010.

_____
UNITED STATES DISTRICT JUDGE

---

[10] Boger has moved for discovery from these defendants concerning his claims about his isolation cell. However, he has suggested nothing in this discovery that would subject them to liability. For the reasons stated earlier, the court dismisses Boger's claims despite these outstanding discovery requests.